**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Kendall La Shonne White, Petitioner -vs- Charles L. Ryan, et al., Respondents. | CV-15-2482-PHX-JJT (JFM) **Report & Recommendation on Petition for Writ of Habeas Corpus** |

## I.    MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Arizona State Prison Complex at Buckeye, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on December 7, 2015 (Doc. 1).  On January 26, 2016, Respondents filed their Response (Doc. 7).  Petitioner has not replied.

The Petitioner's Petition is now ripe for consideration.   Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II.    RELEVANT FACTUAL & PROCEDURAL BACKGROUND

### A.    FACTUAL BACKGROUND AND PROCEEDINGS AT TRIAL

On February 13, 2012, Petitioner was indicted on one count of Aggravated Assault and one count of Disorderly Conduct, both designated as dangerous offenses and domestic violence offenses.  (Exhibit A, Indictment.)  (Exhibits to the Answer, Doc. 7, are referenced herein as "Exhibit ___.")   The charges stemmed out of an altercation between Petitioner and his wife.

1

On March 5, 2013, the parties appeared for a hearing on the defense's motion to preclude expert testimony.   (Exhibit E, R.T. 3/5/13.)   After advising the court of problems in obtaining compliance by witnesses (Petitioner's wife and daughter) with subpoenas for depositions, defense counsel reported that the prosecution had re-extended a plea offer with the stipulation that Petitioner was obligated to accept immediately, without being able to interview the recalcitrant witnesses.  (*Id.* at 1-8.)  The prosecutor confirmed that the plea offer was based upon it being accepted prior to the witness depositions, with recognition that the results of the deposition could improve or worsen the state's position.   Defense counsel reported that the parties had been through two settlement conferences, but the separate probation violation had not been directly addressed.  The prosecutor agreed to make the separate probation violation concurrent if the offer were accepted "in the next five minutes."  (*Id.* at 8-11.)  The court recessed to permit counsel to confer with Petitioner, and upon returning Petitioner addressed the Court and expressed that his wife had recanted her allegations against him, and then asked about alternatives:

> THE DEFENDANT: Can we do the interview first before I make a decision?
> THE COURT: It's not up to me. It's up to the State, and I assume the answer is still no.
> Is that right, Mr. Rademacher?
> MR. RADEMACHER [the prosecutor]: Yes, Your Honor.
> THE DEFENDANT: If I decide to sign the plea  can we do something better than this?
> MR. RADEMACHER: No.
> May I, Judge?
> The plea is not changing. It's not going to get better. Your wife told police it was you. Your wife told her doctor it was you. We have recorded statements.  We have her medical records. All of that's coming in at trial. So if she gets up here and said it wasn't you, that's why we have the expert sitting outside right now who will testify why we believe she is lying and why she is playing these games. So this is what DV cases are about. So it's up to you, man.

(*Id.* at 12-13.)  After conferring with Petitioner, defense counsel reported that Petitioner wished to proceed with the plea offer. The court asked the deputy to move Petitioner to a table to sign, and then recessed.  (*Id.* at 14.)

Petitioner then signed the written Plea Agreement (Exhibit B), wherein Petitioner agreed to plead guilty to the aggravated assault charge and an amended charge of disorderly conduct.   The only stipulations to sentencing were a prison term on the aggravated assault (count 1), consecutive supervised probation on the disorderly conduct (count 2), and that any prison term on a probation violation on another case would run concurrent.   In addition, the state agreed to dismiss any allegation of prior felony convictions and being on probation.

The court confirmed that Petitioner had read the plea agreement and had signed and initialed it, and had reviewed with his attorney, had his questions answered, and understood it.  (*Id.* at 15-17.)  With regard to agreement the court reviewed:

> THE COURT: Sir, let's take a look at the plea agreement. It tells me you will plead guilty to Count 1, aggravated assault, a class 3 dangerous felony and domestic violence offense committed September 19, 2011. That's Count 1.
> And Count 2, as amended, disorderly conduct, a class 6 non-dangerous designated felony and domestic violence offense committed on the same date.
> So Count 1 is dangerous. Count 2 is non-dangerous. Both are nonrepetitive.
> The State -- and I'm looking now at paragraph 2. As to Count 1 you will be sentenced to the Department of Corrections. And it does not say how long.  That will be up to the Court.
> And Count 2 you will be put on probation upon your physical release.
> You are to have no victim contact unless approved in writing by the probation department, pay restitution in an amount not to exceed $100,000.
> And then your probation violation in 2007, whatever sentence you got in that ca se  would run concurrently with your sentence in this case.
> And then the State's going to dismiss some sentencing enhancement allegations against you as well.
> Is that the agreement that you have with the State, sir?
> THE DEFENDANT: Yes, sir.
> THE COURT: All right. Now, concerning Count 1, the presumptive sentence is 7-1/2. The minimum is 5. Maximum is 15. And probation is not available.
>                     * * *
> So, sir, what I have just reviewed with you  is the possible range of penalty and sentence for the two  offenses that you're pleading guilty to. Do you  understand the possible range of penalty and sentence?
> THE DEFENDANT: Yes, sir.

(*Id.* at 17-19.)  Petitioner proceeded to plead guilty.

3

Petitioner subsequently filed a series of motions (Exhibits F, G, H and I) attempting to withdraw from his plea and plea agreement, arguing mental impairment (including a history of mental illness and failure to take his medication at the time of the plea), prosecutorial misconduct and coercion, and his innocence.  The court conducted an evidentiary hearing on the motions on September 6, 2013.  Petitioner argued that his plea was not knowing and voluntary because he was not taking his medications, felt coerced by the threat of additional prison time if he proceeded to trial, did not understand why the state refused to allow an interview of the witnesses, and felt he had to plead guilty because he was led to believe he would lose if he proceeded to trial, and his wife would be held in custody pending trial.  (Exhibit K, R.T. 9/6/13 at 1-10.)  He further argued that while counsel was reviewing the plea agreement with him she told him he would be getting the minimum sentence, and that he failed to alert the court when reviewing the plea because he was not taking his medications at the time.  (*Id.* at 10-12.) He reported that the medication he began taking since "helps with voices that I hear and helps me to think clear, to make sound decisions in everyday life, and I just wasn't able to do that the day of signing the plea agreement."  (*Id.* at 12.)  Petitioner asked for additional time to have his behavioral health doctor testify, but the court related that it had reviewed the medical records, and Petitioner was unable to explain what additional testimony the doctor would add.  (*Id.* at 12-18.)  The court found no "manifest injustice," and denied the motions to withdraw from the plea.  (*Id.* at 18.)

The court followed up with a written order, finding:

> Here, Defendant contends that he was not taking various medications at the time he entered into the plea. His medical records from Southwest Behavioral (filed with one of his motions) do show he was diagnosed with Major Depressive Disorder with psychotic features and Post-Traumatic Stress Disorder. He was prescribed anxiety and antidepressant medications in April of 2011, but by August 23, 2011, Defendant had been off that medication for three months. Records from October 31, 2011 reflect that Defendant was then taking Abilify (for paranoia and disorganized thought), Benztropine (for EPS) and Trazadone (for insomnia).
> Defendant was arrested in February 2012 and has remained in jail since. His medical records from Correctional Health Services corroborate that he was not taking any medication while in custody

4

until he began taking Celexa, an antidepressant, in April 2013 - after he accepted the plea offer in this case. Defendant claims the Celexa helped him understand things better, and that may be so. But nothing in his Correctional Health Services records (or his Southwest Behavioral records, for that matter) indicates that Defendant lacked capacity to contract or that he suffered any condition that would invalidate his waiver of his right to trial.

Nor has Defendant identified anything material about the plea agreement that he was mistaken about or did not understand. Indeed, Defendant was focused enough mentally during the plea colloquy that he insisted his conduct was not intentional, and agreed only that he recklessly caused the victim's injuries.

Defendant also says that he felt coerced into accepting the plea agreement. But he participated in two settlement conferences earlier in the case; his lack of medication then did not prevent him from summarily rejecting the State's plea offers. Defendant also denied any coercion during the plea colloquy.

Defendant stresses also that his lawyer advised him that he was likely to be found guilty. But his counsel's frank assessment of the case does not constitute coercion. Nor does the fact that the State secured the testimony of two critical witnesses for trial mean Defendant's decision to plead guilty was not voluntary.

In short, Defendant's guilty plea on the eve of trial was made knowingly, intelligently and voluntarily. The Court finds no manifest injustice permitting the Defendant to withdraw from the plea.

(Exhibit L, M.E. 9/19/13 at 3.)

Petitioner appeared for sentencing on September 26, 2013.   The prosecution argued Petitioner's priors and danger to the community, and requested the maximum sentence of 15 years.  (Exhibit N, R.T. 9/26/13 at 1-6.)  The defense argued Petitioner's mental health history, troubles with alcohol abuse, an abusive upbringing, and lack of access to his mental health medications, and asked for a "slightly mitigated sentence." (*Id.* at 6-8.)  The court sentenced Petitioner to an aggravated term of 10 years (plus the consecutive probation), citing as aggravators Petitioner's criminal and violent record, and as mitigators his upbringing, mental health and alcohol abuse history, and efforts to obtain help on his own.  (*Id.* at 9-13.)  Petitioner was given a concurrent two and one-half year sentence on the probation matter.  (*Id.* at 14.)

## B.    PROCEEDINGS ON DIRECT APPEAL

Petitioner did not file a traditional direct appeal.  (Petition, Doc. 1 at 2.)

Moreover, as a pleading defendant, Petitioner had no right to file such a direct

appeal. *See* Ariz.R.Crim.P. 17.1(e); and *Montgomery v. Sheldon*, 181 Ariz. 256, 258, 889 P.2d 614, 616 (1995).

## C.      PROCEEDINGS ON POST-CONVICTION RELIEF

Less than sixty days later, on November 21, 2013, Petitioner filed a Notice of Post-Conviction Relief (Exhibit O).   Counsel was appointed, who eventually filed a notice of inability to find an issue for review.  (Exhibit P, M.E. 12/23/13; Exhibit S, M.E. 7/30/14.)  Petitioner was given leave to file a *pro per* PCR petition by September 15, 2014, and counsel was ordered to remain in an advisory capacity.  (Exhibit S, M.E. 7/30/14.)  On September 29, 2014, the Court expanded the deadline to October 29, 2014. (Exhibit X, M.E. 2/10/15 at 2.)

On November 4, 2014, some six days after the deadline, Petitioner filed his *pro per* PCR petition (Exhibit T).   Petitioner raised claims of ineffective assistance of counsel based on counsel's failure to advise him the plea offered was no longer capped at 7.5 years, and failure to obtain witness statements.

The PCR court found that both claims were precluded as untimely, Petitioner's petition having been filed after the expiration of the deadline.  The PCR petition was dismissed.  (Exhibit X, M.E. 2/10/15.)

Petitioner did not seek review by the Arizona Court of Appeals.  (Petition, Doc. 1 at 5; Exhibit Y, Clerk Response.)

## D.      PRESENT FEDERAL HABEAS PROCEEDINGS

**Petition** - Petitioner commenced the current case by filing his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on December 7, 2015 (Doc. 1). Petitioner's Petition asserts the following four grounds for relief:

> In Ground One, Petitioner alleges that he received ineffective assistance of counsel when his counsel allowed him to accept a plea deal that was different than what had been promised to him. In Ground Two, Petitioner alleges that his sentence is illegal because the plea agreement he accepted provided for a term of imprisonment of 7.5 years, but he was sentenced to 10 years. In Ground Three,

Petitioner alleges that he was subjected to prosecutorial misconduct when the prosecutor coerced Petitioner into pleading guilty by threatening to incarcerate his wife and daughter if his wife refused to testify. In Ground Four, Petitioner alleges that he was denied his right to competent counsel when his counsel left the courtroom when Petitioner was signing the plea agreement.

(Order 12/18/15, Doc. 4 at 1-2.)

**Response** - On January 26, 2016 Respondents filed their Response ("Answer") (Doc. 7). Respondents concede that the petition is timely,[1] but argue that Petitioner failed to properly exhaust his state remedies, and that Ground 1 was barred on a procedural state ground. Respondents argue that Petitioner cannot rely upon ineffective assistance of PCR counsel to excuse his procedural failures because Petitioner's defaults occurred when he failed to include the claims in his *pro per* PCR petition, and then again when he failed to seek review by the Arizona Court of Appeals. Respondents also argue that *Martinez v. Ryan* has no application because Petitioner's of-right PCR proceeding was the functional equivalent of a direct appeal.

**Reply** – Petitioner was given 30 days from service of the Answer, or until Monday, February 29, 2016, to reply in support of his Petition. That time has passed, and Petitioner has not replied.

## III.   APPLICATION OF LAW TO FACTS

### A.   EXHAUSTION, PROCEDURAL DEFAULT AND PROCEDURAL BAR

Respondents argue that Petitioner's claims are either procedurally defaulted or were procedurally barred on an independent and adequate state ground, and thus are

---

[1] The undersigned determines hereinafter that Petitioners' PCR proceeding terminated on October 29, 2014, when the time to file his PCR petition expired. On that basis, the subsequent PCR petition amounted to a second PCR proceeding, and because it was untimely, it would not have tolled the statute of limitations. Assuming *arguendo* that Petitioner had 30 days after the October 29, 2014 deadline to seek review in his of-right PCR proceeding, that would mean his conviction became final on November 28, 2014, and his one year expired one year later on November 28, 2015, making his December 7, 2015 federal petition some 9 days delinquent. Nonetheless, because Respondents do not urge the statute of limitations as a defense, the undersigned does not address it. *See Day v. McDonough*, 547 U.S. 198, 209 (2006) ("district courts are permitted, but not obliged, to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition").

7

barred from federal habeas review.

**1.**    **Exhaustion Requirement**

Generally, a federal court has authority to review a state prisoner's claims only if available state remedies have been exhausted. *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (*per curiam*). The exhaustion doctrine, first developed in case law, has been codified at 28 U.S.C. § 2254(b) and (c). When seeking habeas relief, the burden is on the petitioner to show that he has properly exhausted each claim. *Cartwright v. Cupp*, 650 F.2d 1103, 1104 (9th Cir. 1981)(*per curiam*), *cert. denied*, 455 U.S. 1023 (1982).

Ordinarily, to exhaust his state remedies, the petitioner must have fairly presented his federal claims to the state courts. "A petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005).

**Proper Forum** - "In cases not carrying a life sentence or the death penalty, 'claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them.'" *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2005)(quoting *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).

**Proper Vehicle** - Ordinarily, "to exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32." *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994). Only one of these avenues of relief must be exhausted before bringing a habeas petition in federal court. This is true even where alternative avenues of reviewing constitutional issues are still available in state court. *Brown v. Easter*, 68 F.3d 1209, 1211 (9th Cir. 1995); *Turner v. Compoy*, 827 F.2d 526, 528 (9th Cir. 1987), *cert. denied*, 489 U.S. 1059 (1989).

**Factual Basis** – A petitioner must have fairly presented the operative facts of his

8

federal claim to the state courts as part of the same claim.  A petitioner may not broaden the scope of a constitutional claim in the federal courts by asserting additional operative facts that have not yet been fairly presented to the state courts.  Expanded claims not presented in the highest state court are not considered in a federal habeas petition. *Brown v. Easter*, 68 F.3d 1209 (9th Cir. 1995); *see also, Pappageorge v. Sumner*, 688 F.2d 1294 (9th Cir. 1982), cert. denied, 459 U.S. 1219 (1983).  And, while new factual allegations do not ordinarily render a claim unexhausted, a petitioner may not "fundamentally alter the legal claim already considered by the state courts." *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986). *See also Chacon v. Wood*, 36 F.3d 1459, 1468 (9th Cir.1994).

**Legal Basis** - Failure to alert the state court to the constitutional nature of the claim will amount to failure to exhaust state remedies.  *Duncan v. Henry*, 513 U.S. 364, 366 (1995).   While the petitioner need not recite "book and verse on the federal constitution," *Picard v. Connor,* 404 U.S. 270, 277-78 (1971) (quoting *Daugherty v. Gladden*, 257 F.2d 750, 758 (9th Cir. 1958)), it is not enough that all the facts necessary to support the federal claim were before the state courts or that a "somewhat similar state law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982)(*per curiam*).  "[T]he petitioner must make the federal basis of the claim explicit either by specifying particular provisions of the federal Constitution or statutes, or by citing to federal case law," *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005), or by "a citation to a state case analyzing [the] federal constitutional issue." *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003).  But a drive-by-citation of a state case applying federal and state law is not sufficient.

> For a federal issue to be presented by the citation of a state decision dealing with both state and federal issues relevant to the claim, the citation must be accompanied by some clear indication that the case involves federal issues. Where, as here, the citation to the state case has no signal in the text of the brief that the petitioner raises federal claims or relies on state law cases that resolve federal issues, the federal claim is not fairly presented.

*Casey v. Moore*, 386 F.3d 896, 912 n. 13  (9th Cir. 2004).

9

**Fair Presentation** - "[O]rdinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). The Arizona habeas petitioner "must have presented his federal, constitutional issue before the Arizona Court of Appeals within the four corners of his appellate briefing." *Castillo v. McFadden*, 399 F.3d 993, 1000 (9th Cir. 2005).  *But see Insyxiengmay v. Morgan*, 403 F.3d 657, 668-669 (9th Cir. 2005) (arguments set out in appendix attached to petition and incorporated by reference were fairly presented).

## 2.   **Procedural Default**

Ordinarily, unexhausted claims are dismissed without prejudice. *Johnson v. Lewis*, 929 F.2d 460, 463 (9th Cir. 1991).  However, where a petitioner has failed to properly exhaust his available administrative or judicial remedies, and those remedies are now no longer available because of some procedural bar, the petitioner has "procedurally defaulted" and is generally barred from seeking habeas relief.  Dismissal with prejudice of a procedurally defaulted habeas claim is generally proper absent a "miscarriage of justice" which would excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).

Respondents argue that Petitioner may no longer present his unexhausted claims to the state courts.  Respondents rely upon Arizona's preclusion bar, set out in Ariz. R. Crim. Proc. 32.2(a) and time limit bar, set out in Ariz. R. Crim. P. 32.4.  (Answer, Doc. 7 at 9.)

**Remedies by Direct Appeal** - Under Ariz.R.Crim.P. 31.3, the time for filing a direct appeal expires twenty days after entry of the judgment and sentence. Further, no provision is made for a successive direct appeal.   Accordingly, direct appeal is no longer available for review of Petitioner's unexhausted claims.  Moreover, as noted above, Petitioner, as a pleading defendant, had no right to file a traditional direct appeal.

**Remedies by Post-Conviction Relief** – Under Arizona's preclusion, waiver and

10

timeliness bars, Petitioner can no longer seek review by a subsequent PCR Petition.

Preclusion Bar – Under the rules applicable to Arizona's post-conviction process, a claim may not be brought in a petition for post-conviction relief if the claim was "[f]inally adjudicated on the merits on appeal or in any previous collateral proceeding." Ariz. R. Crim. P. 32.2(a)(2).

Waiver Bar - Under the rules applicable to Arizona's post-conviction process, a claim may not ordinarily be brought in a petition for post-conviction relief that "has been waived at trial, on appeal, or in any previous collateral proceeding."   Ariz.R.Crim.P. 32.2(a)(3).   Under this rule, some claims may be deemed waived if the State simply shows "that the defendant did not raise the error at trial, on appeal, or in a previous collateral proceeding." *Stewart v. Smith*, 202 Ariz. 446, 449, 46 P.3d 1067, 1070 (2002) (quoting Ariz.R.Crim.P. 32.2, Comments). *But see State v. Diaz*, 236 Ariz. 361, 340 P.3d 1069 (2014) (failure of PCR counsel, without fault by petitioner, to file timely petition in prior PCR proceedings did not amount to waiver of claims of ineffective assistance of trial counsel).

For others of "sufficient constitutional magnitude," the State "must show that the defendant personally, "knowingly, voluntarily and intelligently' [did] not raise' the ground or denial of a right." *Id*.  That requirement is limited to those constitutional rights "that can only be waived by a defendant personally." *State v. Swoopes*, 216 Ariz. 390, 399, 166 P.3d 945, 954 (App.Div. 2, 2007).  Indeed, in coming to its prescription in *Stewart v. Smith*, the Arizona Supreme Court identified: (1) waiver of the right to counsel, (2) waiver of the right to a jury trial, and (3) waiver of the right to a twelve-person jury under the Arizona Constitution, as among those rights which require a personal waiver.  202 Ariz. at 450, 46 P.3d at 1071.   Claims based upon ineffective assistance of counsel are determined by looking at "the nature of the right allegedly affected by counsel's ineffective performance. *Id*.

Here, none of Petitioner's claims are of the sort requiring a personal waiver, and Petitioner's claims of ineffective assistance similarly have at their core the kinds of

claims not within the types identified as requiring a personal waiver.

Timeliness Bar - Even if not barred by preclusion or waiver, Petitioner would now be barred from raising his claims by Arizona's time bars.  Ariz.R.Crim.P. 32.4 requires that petitions for post-conviction relief (other than those which are "of-right") be filed "within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the order and mandate in the direct appeal, whichever is the later."  *See State v. Pruett*, 185 Ariz. 128, 912 P.2d 1357 (App. 1995) (applying 32.4 to successive petition, and noting that first petition of pleading defendant deemed direct appeal for purposes of the rule).   That time has long since passed.

Exceptions - Rules 32.2 and  32.4(a) do not bar dilatory claims if they fall within the category of claims specified in Ariz.R.Crim.P. 32.1(d) through (h). See Ariz. R. Crim. P.  32.2(b) (exceptions to preclusion bar); Ariz. R. Crim. P.  32.4(a) (exceptions to timeliness bar).  Petitioner has not asserted that any of these exceptions are applicable to his claims.   Nor does it appears that such exceptions would apply.  The rule defines the excepted claims as follows:

> d. The person is being held in custody after the sentence imposed has expired;
> e. Newly discovered material facts probably exist and such facts probably would have changed the verdict or sentence. Newly discovered material facts exist if:
> (1) The newly discovered material facts were discovered after the trial.
> (2) The defendant exercised due diligence in securing the newly discovered material facts.
> (3) The newly discovered material facts are not merely cumulative or used solely for impeachment, unless the impeachment evidence substantially undermines testimony which was of critical significance at trial such that the evidence probably would have changed the verdict or sentence.
> f. The defendant's failure to file a notice of post-conviction relief of-right or notice of appeal within the prescribed time was without fault on the defendant's part; or
> g. There has been a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence; or
> h. The defendant demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found defendant guilty of the underlying offense beyond a reasonable doubt, or that the court would not have imposed the death penalty.

Ariz.R.Crim.P. 32.1.

Paragraph 32.1 (d) (expired sentence) generally has no application to an Arizona prisoner who is simply attacking the validity of his conviction or sentence.  Where a claim is based on "newly discovered evidence" that has previously been presented to the state courts, the evidence is no longer "newly discovered" and paragraph (e) has no application.   Petitioner proffers nothing to suggest that he has only recently discovered the facts underlying his claims. Paragraph (f) has no application where the petitioner filed a timely notice of post-conviction relief.  Paragraph (g) has no application because Petitioner has not asserted a change in the law since his last PCR proceeding.  Finally, paragraph (h), concerning claims of actual innocence, has no application to the procedural claims Petitioner asserts in this proceeding.

Therefore, none of the exceptions apply, and Arizona's time and waiver bars would prevent Petitioner from returning to state court. Thus, Petitioner's claims that were not fairly presented are all now procedurally defaulted.

### 3.    Procedural Bar on Independent and Adequate State Grounds

Related to the concept of procedural default is the principle of barring claims actually disposed of by the state courts on state grounds.  "[A]bsent showings of 'cause' and 'prejudice,' federal habeas relief will be unavailable when (1) 'a state court [has] declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement,' and (2) 'the state judgment rests on independent and adequate state procedural grounds.' " *Walker v. Martin,* 562 U.S. 307, 316 (2011).

In *Bennett v. Mueller*, 322 F.3d 573 (9th Cir.2003), the Ninth Circuit addressed the burden of proving the independence and adequacy of a state procedural bar.

> Once the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner. The petitioner may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule. Once having done so, however, the ultimate

burden is the state's.

*Id*. at 584-585.

**Waiver Bar** - Petitioner fails to proffer anything to suggest that Rule 32.2(a) is not an independent and adequate state ground, sufficient to bar federal habeas review of claims a defendant could have but did not raise on direct appeal.  The federal courts have routinely held that it is. "Arizona's waiver rules are independent and adequate bases for denying relief." *Hurles v. Ryan*, 752 F.3d 768, 780 (9th Cir.) *cert. denied*, 135 S. Ct. 710 (2014).  *See also Stewart v. Smith*, 536 U.S. 856, 861 (2002) (Arizona's waiver rule is independent of federal law); and *Ortiz v. Stewart*, 149 F.3d 923, 932 (9th Cir. 1998) (adequate because consistently and regularly applied).

**Timeliness Bar** – Similarly, Petitioner fails to proffer anything to suggest that Rule 32.4 is not an independent and adequate state ground, sufficient to bar federal habeas review of claims a defendant could have but did not raise on direct appeal.  The district courts in Arizona have held that it is.  *See e.g. Morgal v. Ryan*, 2013 WL 655122, at *16 (D. Ariz. Jan. 18, 2013) *report and recommendation adopted*, 2013 WL 645960 (D. Ariz. Feb. 21, 2013).

**4.**     **Application to Petitioner's Claims**

    **a)**     **Ground One**

In Ground One of his Petition, Petitioner argues that he received ineffective assistance of counsel when his counsel allowed him to accept a plea deal that was different than what had been promised to him.  In particular, he asserts he had been promised a capped sentence of 7.5 years, and counsel failed to advise Petitioner that the cap no longer applied.  (Petition, Doc. 1 at 6.)

Petitioner properly notes that this claim could not be raised on traditional direct appeal.  (*Id.*)  *See State v. Spreitz*, 202 Ariz. 1, 3, ¶ 9, 39 P.3d 525, 527 (2002) ("ineffective assistance of counsel claims are to be brought in Rule 32 proceedings…[and] will not be addressed by appellate courts regardless of merit").

Respondents argue that this claim was raised in Petitioner's *pro per* PCR petition, but was disposed of as untimely, under Arizona's time bar, which is independent and adequate, and thus bars federal habeas review of Petitioner's claim.

Indeed, although Petitioner's original of-right proceeding was commenced on a timely basis, Petitioner's *pro per* PCR petition was disposed of as untimely, based upon Petitioner's failure to file it within the briefing time limit set by the PCR court. The claims asserted in that delinquent petition included the instant claim regarding the failure to advise him about the absence of a cap on sentencing.

Respondents assert that this ruling amounted to the application of a state rule that was independent and adequate to bar federal review. Because Respondents have adequately pled the procedural bar, the burden shifts to Petitioner to make out a *prima facie* argument that the rule was either not independent of federal law, or inadequate. *Bennett*, 322 F.3d at 584-585. Petitioner proffers nothing to meet this burden.

The undersigned finds no basis to conclude that the rule was dependent upon an antecedent ruling on the merits of the federal claim, or that it was not well-established and regularly applied. This is particularly because the PCR court had already once extended the deadline. *Cf. Williams v. Ryan,* 623 F.3d 1258, 1264 (9th Cir. 2010) (denial of any extension of time to file PCR petition not well established rule in Arizona).

Accordingly, the undersigned concludes that Petitioner's Ground One was procedurally barred on an independent and adequate state ground.

### b)   Ground Two

In his Ground Two, Petitioner argues that his sentence is illegal because the plea agreement he accepted provided for a term of imprisonment of 7.5 years, but he was sentenced to 10 years. (Petition, Doc. 1 at 7.)

Respondents argue that this claim, along with Grounds Three and Four, has never been presented to the Arizona Court of Appeals, and is not procedurally defaulted.

Indeed, Petitioner has not presented any claim to the Arizona Court of Appeals.

Accordingly, none of his claims was properly exhausted.  Moreover, this claim was not presented to the PCR court, and thus was not procedurally barred.  It is, however, procedurally defaulted under Arizona's preclusion and timeliness bars.

### c)   Ground Three

In Ground Three, Petitioner alleges that he was subjected to prosecutorial misconduct when the prosecutor coerced Petitioner into pleading guilty by threatening to incarcerate his wife and daughter if his wife refused to testify. (Petition, Doc. 1 at 8.) Again, this claim was not presented to the PCR court, has never been presented to the Arizona Court of Appeals, and is now procedurally defaulted.

### d)   Ground Four

In Ground Four, Petitioner alleges that he was denied his right to competent counsel when his counsel left the courtroom when Petitioner was signing the plea agreement. (Petition, Doc. 1 at 9.)  Again, this claim was not presented to the PCR court, has never been presented to the Arizona Court of Appeals, and is now procedurally defaulted.

It is true that Petitioner presented other claims of ineffective assistance to the PCR court, but claims of ineffective assistance are not fungible.  Each must be separately raised.  *See Pappageorge v. Sumner*, 688 F.2d 1294, 1295 (9th Cir. 1982) (presentation of "additional facts of attorney incompetence" transformed claim into one not presented to state court); and *Carriger v. Lewis*, 971 F.2d 329, 333-34 (9th Cir. 1992) (rejecting argument that presentation of any claim of ineffectiveness results in fair presentation of all claims of ineffective assistance).

### e)   Summary Re Exhaustion

Based upon the foregoing, the undersigned concludes that Petitioner has procedurally defaulted on his claims in Grounds Two, Three and Four, and was

16

procedurally barred on independent and adequate state grounds from asserting the claim in Ground One.

**5.    Cause and Prejudice**

If the habeas petitioner has procedurally defaulted on a claim, or it has been procedurally barred on independent and adequate state grounds, he may not obtain federal habeas review of that claim absent a showing of "cause and prejudice" sufficient to excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).

"Cause" is the legitimate excuse for the default.  *Thomas v. Lewis*, 945 F.2d 1119, 1123 (1991). "Because of the wide variety of contexts in which a procedural default can occur, the Supreme Court 'has not given the term "cause" precise content.'" *Harmon v. Barton*, 894 F.2d 1268, 1274 (11th Cir. 1990) (quoting Reed, 468 U.S. at 13), *cert. denied*, 498 U.S. 832 (1990).  The Supreme Court has suggested, however, that cause should ordinarily turn on some objective factor external to petitioner, for instance:

> ... a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that "some interference by officials", made compliance impracticable, would constitute cause under this standard.

*Murray v. Carrier*, 477 U.S. 478, 488 (1986) (citations omitted).

Petitioner has not replied to assert any basis for cause and prejudice.  In his Petition, however, he did assert that his failure to present the claims was the result of the ineffective assistance of PCR counsel.  (Petition, Doc. 1 at 6-9.)

**a)    Ineffectiveness of PCR Counsel Ordinarily Not Cause**

Ordinarily, to meet the "cause" requirement, the ineffective assistance of counsel must amount to an independent constitutional violation.  *Ortiz v. Stewart*, 149 F.3d 923, 932, (9th Cir. 1998).  Accordingly, where no constitutional right to an attorney exists, ineffective assistance will not amount to cause excusing the state procedural default.  *Id*. "Ineffective assistance of counsel can constitute cause to excuse a procedural default

17

only if the petitioner had a constitutional right to counsel in the proceeding in which the default occurred. . . . The fact that counsel is appointed by the state court does not change the result, because counsel is not constitutionally required." *Smith v. State of Idaho*, 392 F.3d 350, 357 (9th Cir. 2004) (emphasis in original, citations omitted).  If there is no federal constitutional right to counsel, a petitioner "cannot establish cause because of the state trial court's failure to appoint him counsel, even if such failure was erroneous as a matter of state law." *Smith*, 392 F.3d at 357 .  In *Patrick Poland v. Stewart*, 169 F. 3d 573 (9th Cir. 1999), the Ninth Circuit held that "[b]ecause there is no right to an attorney in state post-conviction proceedings, there cannot be constitutionally ineffective assistance of counsel in such proceedings."  *Id*. at 588 (quoting *Coleman v. Thompson*, 501 U.S. 722,  752 (1991)).

### b)   Exception for Abandonment without Notice

The Supreme Court has recognized two exceptions to the general rule that ineffectiveness of PCR counsel is not cause.

The first exception was recognized in *Maples v. Thomas*, 132 S.Ct. 912 (2012), where the Supreme Court held that cause could be shown when PCR counsel was not merely negligent (and under the law of agency that negligence being chargeable to the petitioner) but had abandoned the representation without notice to the petitioner, resulting in the loss of his state remedies.

Here, however, Petitioner does not suggest that counsel abandoned the representation without notice, merely that counsel was deficient in not bringing claims Petitioner asserts are meritorious.  Indeed, PCR counsel filed the appropriate notice to the Court when he was unable to find an issue of review. Thus, any such deficiency was not external to the defense, and is chargeable to Petitioner.

### c)   Exception for Claims re Ineffectiveness of Trial & Appellate Counsel

The second exception to the general rule that ineffectiveness of PCR counsel does

not establish cause concerns the failure of PCR counsel to bring claims of ineffective assistance of trial counsel.

In *Martinez v. Ryan,* 132 S.Ct. 1309 (2012), the Supreme Court recognized that because state courts increasingly reserve review of claims of ineffective assistance of trial counsel to post-conviction relief proceedings, the ineffectiveness of counsel in such PCR proceedings could effectively defeat any review of trial counsel's ineffectiveness. Accordingly, the Court recognized a narrow exception to the Court's ruling in *Coleman, supra,* that the ineffectiveness of PCR counsel cannot provide cause.  Arizona, the state at issue in *Martinez*, is just such a state, and accordingly ineffective assistance of PCR counsel can establish cause to excuse a procedural default of a claim of ineffective assistance of trial counsel.  In *Ha Van Nguyen*, 736 F.3d 1287 (9th Cir. 2013), the Ninth Circuit extended *Martinez*  to PCR counsel's ineffectiveness in failing to bring claims of ineffective assistance of appellate counsel.

However, the *Martinez* court made clear that the limited exception it was creating for ineffectiveness of PCR counsel as "cause" did not extend outside the initial PCR proceeding.

> The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts. It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial, even though that initial-review collateral proceeding may be deficient for other reasons.

*Martinez*, 132 S.Ct. at 1320.

For Petitioner to rely upon *Martinez*, Petitioner must "demonstrate[e] two things: (1) 'counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984),' and (2) 'the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.'"  *Cook v. Ryan*, 688 F.3d 598, 607 (9th Cir.

1  2012) (quoting *Martinez*, 132 S.Ct. at 1318).

2

3          d)      **Application of *Martinez* to Petitioner**

4          Petitioner's Grounds Two (illegal sentence), Three (prosecutorial misconduct)

5  and Four (denial of counsel while signing), do not assert claims of ineffective assistance

6  of trial counsel.  Accordingly, and ineffectiveness of PCR counsel in failing to raise

7  these claims would not ordinarily establish cause under *Martinez*.

8          Petitioner's Grounds One (ineffectiveness re cap) does assert a claim of

9  ineffective assistance of trial counsel.

10         In a footnote, Respondents assert the novel argument that *Martinez* is not

11 applicable because Petitioner's of-right PCR proceeding was the functional equivalent of

12 an appeal. "Petitioner's of-right PCR proceedings were not collateral in nature; rather,

13 they were the functional equivalent of a direct appeal."  (Answer, Doc. 7 at 11, n. 10

14 (citing *Summers v. Schriro*, 481 F.3d 710, 716-717 (9th Cir. 2007).)  Respondents thus

15 equate of-right PCR counsel to constitutionally required appellate counsel, whose

16 ineffectiveness is not governed (at least directly) by *Martinez,* and further argue that this

17 effectively removes Arizona in total from *Martinez* because (construing of-right PCR

18 proceedings as a direct appeal), Arizona does not preclude pleading defendants from

19 raising claims of ineffective assistance of PCR counsel on what is functionally their

20 direct appeal.  (*Id.* (citing *State v. Banda*, 307 P.3d 1009, 1012, ¶ 12 (Ariz. App. 2013)

21 (claims of ineffective assistance of trial counsel with respect to the acceptance or

22 rejection of plea agreements are properly raised in of-right PCR proceedings)).)

23         The undersigned finds Respondents' logic compelling.

24         However, this logic requires that this Court treat Petitioner's of-right PCR

25 proceeding as an appeal not only for purposes of deciding whether *Martinez* applies, but

26 for all purposes.  This means that Petitioner was constitutionally entitled to counsel in

27 such proceeding, and any ineffectiveness of Petitioner's PCR counsel in bringing any

28 claims (not just claims of ineffective assistance of trial counsel) must be deemed to be a

basis for a finding of cause and prejudice.  Respondents provide no principled basis for distinguishing between one flavor of claim raised on (the functional equivalent) of direct appeal, and another flavor.

Admittedly this approach seems to go where the *Martinez* Court avoided going.

> *Coleman v. Thompson* left open, and the Court of Appeals in this case addressed, a question of constitutional law: whether a prisoner has a right to effective counsel in collateral proceedings which provide the first occasion to raise a claim of ineffective assistance at trial. These proceedings can be called, for purposes of this opinion, "initial-review collateral proceedings." *Coleman* had suggested, though without holding, that the Constitution may require States to provide counsel in initial-review collateral proceedings because "in [these] cases ... state collateral review is the first place a prisoner can present a challenge to his conviction." As *Coleman* noted, this makes the initial-review collateral proceeding a prisoner's "one and only appeal" as to an ineffective-assistance claim, and this may justify an exception to the constitutional rule that there is no right to counsel in collateral proceedings.
> This is not the case, however, to resolve whether that exception exists as a constitutional matter.

*Martinez*, 132 S.Ct. at 1315.

Of course, in *Martinez,* Respondent argued that its PCR proceeding in that case, which involved a non-pleading defendant, was not an appellate proceeding in which there was a constitutional right to effective assistance of counsel.  Respondent's Brief on Merits, *Martinez v. Ryan*, 2011 WL 3947554   6 (2011).   In contrast to *Martinez*, however, Petitioner did not go to trial, but pled guilty, and thus had no ability whatsoever to a traditional direct appeal.   At least he had no such opportunity beyond an of-right PCR proceeding, which Respondents now concede should be deemed a direct appeal.  Thus, Respondents now functionally urge this Court to find a constitutional right of effective assistance in an of-right PCR proceeding, on the basis that it is really a direct appeal.

Undoubtedly, the jurisprudence of the Supreme Court and the Ninth Circuit has uniformly declined to find a constitutional right to counsel in collateral review proceedings.  *See Martinez*, 132 S.Ct. at 1315; and *Ellis v. Armenakis*, 222 F.3d 627, 633 (9th Cir. 2000).  But both recognize a right to counsel in a direct appeal. *See Halbert v.*

*Michigan*, 545 U.S. 605, 610 (2005) ("the Due Process and Equal Protection Clauses require the appointment of counsel for defendants, convicted on their pleas, who seek access to first-tier review"); *Hendricks v. Zenon*, 993 F.2d 664, 669 (9th Cir. 1993).

The Ninth Circuit has already recognized in a different context that an Arizona of-right PCR proceeding by a pleading defendant is the functional equivalent of direct appeal.  In *Summers v. Schriro*, 481 F.3d 710 (9th Cir. 2007), the Ninth Circuit noted in the context of applying the habeas statute of limitations that prior decisions treating such a proceeding as collateral review, rather than direct review was "based on the parties' uncontested joint position, [and] was unconsidered dictum."  *Id.* at 712.    The court referenced the Supreme Court's decision in *Halbert* that Michigan's "first-tier 'of-right' review procedure available to a plea-convicted Michigan defendant in lieu of a conventional direct appeal is a form of 'direct review'." *Id*.at 713.  The court opined that *Halbert* "signals that some non-traditional state review procedures are forms of direct rather than collateral review."  *Id*   On that basis, the *Summers* court concluded that Arizona's of-right PCR proceeding "is a form of direct review within the meaning of 28 U.S.C. § 2244(d)(1)(A)."  481 F.3d at 717.

In two other cases in the District of Arizona, the courts have concluded that an Arizona pleading defendant has a constitutional right to counsel in an of-right PCR proceeding.  *SeeWalker v. Ryan*, 2015 WL 10575864, at *5 (D. Ariz. Oct. 21, 2015) *report and recommendation adopted*, CV-15-00072-PHX-ROS, 2016 WL 1268487 (D. Ariz. Mar. 31, 2016); and *Ree v. Ryan*, CV-13-00746-TUC-RM, 2015 WL 3889360, at *1 (D. Ariz. June 23, 2015).

Similarly here, this Court can and should accept Respondents' assertion that Petitioner's of-right PCR proceeding must be treated, like the Michigan procedure in *Halbert*, as a direct appeal, rather than collateral review.

Accordingly, *Martinez* has no application to evaluating the performance of Petitioner's counsel in that direct appeal proceeding.  Instead, the normal rule applicable to counsel in direct appeals, that applied in *Halbert*, should apply.  And the clear rule is

that ineffective assistance of counsel in a direct appeal can establish cause to excuse a procedural default.  *See Murray,* 477 U.S. at 492.

### e)    Failure to Exhaust Claims re Of-Right PCR Counsel

The Ninth Circuit has concluded that a *Martinez* ineffective assistance of PCR counsel claim used to establish cause for a procedural default of a claim for ineffective assistance of trial counsel need not be exhausted itself.  *Dickens v. Ryan*, 740 F.3d 1302, 1322 n. 17 (9th Cir. 2014) ("where *Martinez* applies, there seems to be no requirement that the claim of ineffective assistance of PCR counsel as cause for an ineffective-assistance-of-sentencing-counsel claim be presented to the state courts").

Conversely, claims of ineffective assistance of constitutionally required appellate counsel must be properly exhausted to be considered as cause to excuse procedural defaults or procedural bars.  "To constitute cause for procedural default of a federal habeas claim, the constitutional claim of ineffective assistance of counsel must first have been presented to the state courts as an independent claim." *Cockett v. Ray*, 333 F.3d 938, 943 (9th Cir. 2003).  *See*

*Murray,* 477 U.S. at 489.

Here, Petitioner has not properly exhausted any claims by presenting them to the Arizona Court of Appeals, including claims that his counsel in his of-right PCR proceeding was ineffective.  Petitioner clearly had the right to assert such claims in a subsequent PCR proceeding. *See Osterkamp v. Browning*, 226 Ariz. 485, 489, ¶ 17, 250 P.3d 551, 555 (App. 2011) (finding right to counsel in PCR proceeding asserting ineffectiveness of counsel in of-right PCR proceeding).

Because he failed to exhaust his state remedies on a claim of ineffective assistance of of-right PCR counsel, such ineffectiveness cannot be considered as cause to excuse his procedural defaults.

//

//

### f)  Summary re Cause and Prejudice

Based upon the foregoing, the undersigned concludes that Petitioner has failed to establish cause to excuse his procedural defaults.

Although both "cause" and "prejudice" must be shown to excuse a procedural default, a court need not examine the existence of prejudice if the petitioner fails to establish cause. *Engle v. Isaac*, 456 U.S. 107, 134 n. 43 (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 n. 10 (9th Cir.1991).  Petitioner has filed to establish cause for his procedural default.  Accordingly, this Court need not examine the merits of Petitioner's claims or the purported "prejudice" to find an absence of cause and prejudice.

## 6.  Actual Innocence

The standard for "cause and prejudice" is one of discretion intended to be flexible and yielding to exceptional circumstances, to avoid a "miscarriage of justice."  *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986).  Accordingly, failure to establish cause may be excused "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986) (emphasis added).  Although not explicitly limited to actual innocence claims, the Supreme Court has not yet recognized a "miscarriage of justice" exception to exhaustion outside of actual innocence.  *See* Hertz & Lieberman, *Federal Habeas Corpus Pract. & Proc.* §26.4 at 1229, n. 6 (4th ed. 2002 Cumm. Supp.).  The Ninth Circuit has expressly limited it to claims of actual innocence.  *Johnson v. Knowles*, 541 F.3d 933, 937 (9th Cir. 2008).

A petitioner asserting his actual innocence of the underlying crime must show "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence" presented in his habeas petition.  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  A showing that a reasonable doubt exists in the light of the new evidence is not sufficient.  Rather, the petitioner must show that no reasonable juror would have found the defendant guilty.  *Id*. at 329.  This standard is referred to as the "*Schlup*

24

gateway." *Gandarela v. Johnson*, 286 F.3d 1080, 1086 (9th Cir. 2002).

Petitioner fails to offer any showing that no reasonable juror would have found him guilty.  Accordingly his procedurally defaulted and procedurally barred claims must be dismissed with prejudice.

## IV.   CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court judgment.  The recommendations if accepted will result in Petitioner's Petition being resolved adversely to Petitioner.  Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be on procedural grounds. Under the reasoning set forth herein, jurists of reason would not find it debatable whether the district court was correct in its procedural ruling, and jurists of reason would not find the district court's assessment of the constitutional claims debatable or wrong.

Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Petition, a certificate of appealability should be denied.

## V.    RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the Petitioner's Petition for Writ of Habeas Corpus, filed December 7, 2015 (Doc. 1) be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that, to the extent the foregoing findings and recommendations are adopted in the District Court's order, a Certificate of Appealability be **DENIED**.

## VI.    EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See also* Rule 8(b), Rules Governing Section 2254 Proceedings.  Thereafter, the parties have fourteen (14) days within which to file a response to the objections.  Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues,  *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*),  and will constitute a waiver of a party's

right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

Dated: May 2, 2016

15-2482r RR 16 04 14 on HC.docx

James F. Metcalf
United States Magistrate Judge